# IN THE COURT OF APPEALS OF IOWA

No. 20-1693
Filed March 3, 2021

IN THE INTEREST OF M.B.,
Minor Child,

C.B., Mother,
        Appellant.
_____

Appeal from the Iowa District Court for Marion County, Steven Guiter, District Associate Judge.

A mother appeals the termination of her parental rights to her child. **AFFIRMED.**

John C. Heinicke of Kragnes & Associates, P.C., Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

William E. Sales III of Sales Law Firm, P.C., Knoxville, attorney and guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., and Tabor and Ahlers, JJ.

**VAITHESWARAN, Presiding Judge.**

A mother appeals the termination of her parental rights to her child, born in 2010. She contends (1) the State failed to prove the grounds for termination cited by the district court; (2) the district court should have afforded her additional time to work toward reunification; (3) termination was not in the child's best interests; and (4) the district court should have invoked an exception to termination.

In a prior appeal, the court of appeals summarized the facts leading up to the child's adjudication as a child in need of assistance:

> The child's mother and father divorced in 2015. After the divorce, the child lived with her mother. . . .
> The department of human services intervened after receiving a complaint that green mold was growing on the child's scalp, the mother's home lacked running water, and the city was about to condemn the house. The department applied to have the child removed from the mother's custody. The district court granted the application, and the child was placed with her father.
> The father testified that when the child was placed with him, she was "completely behind" on her immunizations, had not been to a dentist for "[t]hree years," had mold in her hair, and was wearing diapers. She was "extremely behind" in her education, with a "non-existent ability to write," had reading skills at the level of "a kindergartner," and had "non-existent" math skills. He stated she had no "learning disabilities to explain why she was behind." He confirmed the mother's house lacked running water, had "four to eight inches of sewage water just floating in the basement," was "overrun with clutter" including "boxes and books" on the child's bed, and had "rotting food on the tables and in the refrigerator."
> The child was evaluated at a child protection center. Based on a review of her medical chart, the evaluator suspected that she experienced "[m]edical [c]hild [a]buse (Munchausen Syndrome by proxy)" at the hands of her mother.
> A child protective worker employed by the department attended the evaluation and heard the child "talk about not having water to bathe or shower." She issued a "founded" child-abuse report based on the absence of running water; the "placarding" of the house, meaning "the city determined that it was not a livable location for anybody to continue to inhabit"; the mold in the child's hair; and the suspected medical child abuse.

. . . .

Shortly before the department intervened, the mother was charged with operating a motor vehicle while under the influence, first offense. The mother appeared to concede she pled guilty to the charge. She also stated that, while she was jailed on the charge, her disabled adult son cared for the child.

*In re M.B.*, No. 20-0404, 2020 WL 2065965, at *1–2 (Iowa Ct. App. Apr. 29, 2020). The court affirmed the adjudication of the child under Iowa Code sections 232.2(c) (2), (g), and (n) (2019) but reversed the adjudication under section 232.2(6)(b). *Id.* at *3.

Following the appeal, the district court filed a dispositional review order maintaining the status quo. The State later petitioned to terminate the mother's parental rights. The district court granted the petition, citing several statutory grounds.

"When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We will focus on Iowa Code section 232.116(1)(f) (2020), which requires proof of several elements, including proof "that at the present time the child cannot be returned to the custody of the child's parents." Iowa Code § 232.116(1)(f)(4).

The mother disputes the cannot-be-returned element but at the same time concedes that, "because [she] has unresolved substance abuse and mental health issues, she cannot presently take custody of her daughter." *See In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014) (noting that "at the present time" means at the time of termination hearing (citing *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010))). Her concession effectively resolves her evidentiary challenge, as does her testimony

at the termination hearing. Specifically, when asked if it would be safe to have the child returned to her, she responded, "No—not at this time." On our de novo review, we agree with the district court that section 232.116(1)(f) was satisfied.

The mother alternatively asserts she should have been afforded additional time to work toward reunification, given the effects of the 2020 derecho and recent upgrades to her home. *See* Iowa Code §§ 232.104(2)(b), .117(5). But the mother squandered the time she was given. The department of human services case manager testified the mother had no visits with the child to her knowledge and, contrary to the mother's assertion, "her visitation was not dependent on" completion of certain evaluations. The case manager also stated the mother did not make contact with the department or respond to a service provider's offers of services. In her words, "We've had very little information on the mother's services, housing, abilities to parent, mental health, [and] substance [abuse] status." She had "no reason to believe it would be any different" in six months and she believed a six-month extension would be "very detrimental to" the child. We agree with the district court that "[a] 6-month extension is not appropriate in this case as there is not a reasonable belief that [the mother's] behavior would change to allow [the child] to safely return to [the mother's] care."

Termination must also serve the child's best interests. *See id.* § 232.116(2). The mother's acknowledgment that it would be unsafe to have the child returned to her care is virtually dispositive of this issue. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) ("Section 232.116(2) requires us to 'give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs

of the child.'" (quoting Iowa Code § 232.116(2))). Additionally, the case manager testified the father was "able to meet the child's health and emotional needs" and the child had "really . . . thrive[d] academically, emotionally, [and] socially." She conveyed the child's "very strong desire for" the case "to end." On our de novo review, we agree with the district court that termination of the mother's parental rights was in the child's best interests, given the child's age of ten, the fact that she was "doing well in her father's home" and her "wishes to remain with her father."

We are left with the mother's assertion that the district court should not have terminated her parental rights in light of the bond she shared with the child. *See* Iowa Code § 232.116(3)(c). That bond was severely tested by the mother's refusal to participate in visits. Her decision to sever contact with the child served as sufficient reason to deny this permissive exception to termination. *See In re A.S.*, 906 N.W.2d 467, 475 (Iowa 2018). There was also the trauma the child experienced in the mother's care. According to the case manager, that trauma led the child to express "[a] real hesitation" about seeing her mother. We agree with the district court's refusal to invoke the exception.

We affirm the termination of the mother's parental rights to the child.

**AFFIRMED.**